UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| William Douglas Dawson, Jr., #248371,<br><br>        Plaintiff,<br><br>vs.<br><br>Ass. Warden Denis Bush; Warden Larry Cartledge; Ass. Warden Florence Mauney,<br><br>        Defendants.<br>_____ | C/A No. 4:13-2236-DCN-TER<br><br><br><br><br>Report and Recommendation |

## I. PROCEDURAL BACKGROUND

The Plaintiff, William Douglas Dawson, Jr., proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on August 19, 2013. Plaintiff filed the first amended complaint on November 5, 2013, and the second amended complaint on January 24, 2014. (Docs. #20 and #45). Plaintiff is a prisoner in the custody of the South Carolina Department of Corrections (SCDC) and housed at the Lee Correctional Institution. At all times regarding the allegations in the complaint, Plaintiff was housed at the Perry Correctional Institution. Plaintiff seeks monetary damages and injunctive relief.

Defendants filed a motion for summary judgment (hereinafter "Defendants") on May 23, 2014, along with a memorandum, affidavits, and exhibits in support of the motion. (Doc. #83). Because Plaintiff is proceeding *pro se*, he was advised on or about May 27, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

response on July 9, 2014. (Doc. #100). Defendants filed a reply on July 21, 2014. (Doc. #105).

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48

(1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ANALYSIS

Plaintiff alleges Defendants violated his constitutional rights for failure to protect from a risk of harm and for placing him in segregation for disciplinary detention (DD) without cause. Specifically, Plaintiff alleges on July 30, 2012, Major Bush "placed my life and safety in mortal danger" when he handcuffed him behind his back and pushed him out on the wing "in the midst of 94 . . . hostile men." (Second Amended complaint). Plaintiff asserts that Major Bush put his life in danger because anytime an inmate is to be placed in restraints, the inmate is to be escorted off the

wing before being placed in handcuffs or the wing is to be on lock-down. Plaintiff contends that Major Bush disregarded the dangers he placed on Plaintiff's life. Additionally, Plaintiff alleges that Major Bush took him outside onto the yard in restraints with inmates walking up and down the sidewalk when the yard should have been placed on lock down before taking him out in restraints. Plaintiff asserts that Major Bush is "purposefully trying to have me assaulted or even killed!" Id. Plaintiff alleges that he was then placed in lock-up that night for no reason and kept in lock-up without visitation privileges. Plaintiff alleges that the Warden is holding him in lock-up for what he says is old DD time while releasing other inmates that have old DD time which he asserts is discrimination and a violation of equal protection.

Defendants argue they are entitled to summary judgment based on a failure to exhaust administrative remedies, Plaintiff cannot state an Eighth Amendment violation, Plaintiff's First Amendment rights have not been violated, qualified immunity, and Plaintiff is not entitled to injunctive relief.

**Exhaustion**

Defendants argue that they are entitled to summary judgment due to Plaintiff's failure to exhaust his administrative remedies prior to filing this action. Section 1997e(a) of the PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner has not exhausted all of his administrative remedies by "failing to follow the required steps so that remedies that once were available to him no longer are." Moore v. Bennette, 517 F.3d 717, 725 (4th

Cir.2008). Exhaustion requires that the prisoner utilize all available procedures so that prison officials have the opportunity to remedy the situation administratively. Id. The PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002) (internal citations and quotations omitted). The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Exhaustion is a prerequisite to suit that must be completed prior to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir.2005).

Defendants submitted the affidavit of Ann Hallman (Hallman) who attests that she is employed by the SCDC as the chief of the inmate Grievance Branch which oversees and monitors the processing of inmate grievances through the agency. (Hallman affidavit, doc. #83-2). Hallman searched the grievance records of the Plaintiff finding that Plaintiff submitted grievance number PCI-2127-12 which was received on August 2, 2012, complaining that Major Dennis Bush placed him in danger on July 30, 2012, by restraining him while other inmates were not locked down. Id. Plaintiff received the Warden's response on June 27, 2013, which stated that "when you were placed in handcuffs you were in your cell, not on the open wing. As you know, there are times when inmates are cuffed without the entire dorm being locked down. Also you say that Mr. Bush ordered 3 inmates who were walking toward Q3 while you were being escorted down the sidewalk from Q2 to 'Get Back'. This procedure was to protect you as you were being transported in cuffs." Id. The grievance was denied and Plaintiff submitted a Step 2 Appeal received on July 2, 2013. Id.

Hallman attests that Plaintiff also submitted grievance number PCI-3043-12 received on

November 6, 2012, in which Plaintiff alleged that on July 30, 2012, he was placed in lock-up and required to serve disciplinary detention (DD) for offenses previously convicted. Id. Plaintiff received the Warden's response on Jule 11, 2013, which stated:

> Upon reviewing all relevant information in your complaint (to include disciplinary history, bed moves, and custody) I must concur with Mr. Ward in that general population is not a good choice for you at this time. It is true that you did not receive a charge when the investigation was complete. However, it was my choice to reinstate the DD time you had previously earned. You have been convicted of 116 charges during your incarceration and currently have DD time until 4/18/15. At this point you are 13 months disciplinary free. However, 1 of the disciplinary convictions in April, 2012 was a class I Narcotics charge and the other a class 2 for Threatening Staff. Based on this information and your history while incarcerated, your grievance denied.

Id. Hallman attached a copy of that grievance. Plaintiff submitted a Step 2 appeal which was received on June 12, 2013. Id.

Plaintiff filed a response to the motion for summary judgment asserting that he has exhausted his administrative remedies by either receiving a response to his Step 2 grievance or by the fact that the time limitations to respond to his grievances had expired. Plaintiff attached copies of several request to staff forms and grievance forms with responses.

In Defendants' reply to Plaintiff's response, they assert that Plaintiff referenced one other grievance, PCI-2711-12. They attached a copy of that grievance as Exhibit A. Defendants contend that Plaintiff does mention "cruel and unusual punishment" in that grievance. Thus, Defendants assert that Plaintiff has not shown or produced a grievance on the issues of Equal Protection and Freedom of Association for which they are entitled to summary judgment for failure to exhaust administrative remedies.

As to Plaintiff's allegations of risk of harm as to Major Bush, Plaintiff filed his Step 2 grievance on July 2, 2013, and filed this complaint on August 19, 2013, without receiving a response. Therefore, this issue was not exhausted prior to filing this action. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., supra.

Even if the allegations of risk of harm were exhausted, the claim fails. Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To establish an Eighth Amendment claim for failure to protect, a prisoner must show, first, that he was incarcerated under conditions posing a substantial risk of serious harm, and second, that prison officials acted with deliberate indifference. Id. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir.2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Id. (internal citation and quotation marks omitted). Plaintiff has failed to produce any evidence sufficient to satisfy either the objective or subjective prongs of the Eighth Amendment analysis. Although he baldly claims that Major Bush subjected him to a risk of harm by handcuffing him and escorting him out of the wing and across the yard with out either being on lockdown, he has failed to allege any significant injury as a result

only claiming that he could have been harmed. A mere "generalized concern for his safety or welfare" is insufficient to satisfy the objective element of a claim for deliberate indifference. Drayton v. Cohen, No. CA 2:10–3171–TMC, 2012 WL 666839, at *7 (D.S.C. Feb.29, 2012) (unpublished).

Based on Plaintiff's response and Defendants' reply, it appears Plaintiff has exhausted his administrative remedies with regard to the allegations associated with DD which also raised allegations of discrimination/equal protection violation. Therefore, the merits of these allegations will be discussed below.

**Disciplinary Detention/Equal Protection**

As discussed above, Plaintiff alleges that he was placed in "lockup" on July 30, 2012, and required to serve DD time after he had been released from the special management unit (SMU) without new charges being issued. Plaintiff alleges that he was placed in SMU for offenses that he was previously convicted of without being charged or told why he was being placed in lock-up. Plaintiff asserts that the Warden started a new rule in October 2012 that if an inmate had two years or less of DD time, he could return to the general population. Plaintiff alleges that he has never had over two years of DD time since he was brought back to lock-up on July 30, 2012. Plaintiff contends that he never had a hearing and has never been told why he was on lock-up. Plaintiff states that other inmates were released back into general population while he was not released. Thus, Plaintiff alleges discrimination and a violation of equal protection and due process. In his response to the motion for summary judgment, Plaintiff asserts that he was first told that he was being placed in lock-up pending an investigation but was later told he was being held due to unserved DD time. Plaintiff

asserts that he was never charged from the "investigation" which he states was bogus and that other inmates with old DD time were released back into the general population when he was not. Plaintiff attached declarations from other inmates stating they still had unserved DD time but were released back into the general population.

Defendants argue that while Plaintiff asserts that other inmates have had their DD time suspended and were placed back in the general population, Plaintiff "is presently in the general population of Lee Correctional Institution despite the fact that he has DD time remaining that he has not served." (Doc. #105, p. 2). Defendants argue that at the time Plaintiff was returned to DD, he had refused directives to uncover his cell window and had threatened to beat up his cell mate. Defendants assert that Plaintiff cannot show that he has been treated differently from others similarly situated or that the alleged treatment was caused by intentional discrimination.

Defendants submitted the affidavit of Warden Florence Mauney (Mauney) who attests that he is the Associate Warden with the SCDC and assigned to Perry Correctional Institution (PCI). (Mauney's affidavit, doc. #83-5). Warden Cartledge elected not to waive the balance of Plaintiff's DD time which is within his authority and discretion. Id. Plaintiff currently has DD time until February 7, 2015. Id. There is no policy or procedure that requires his release to the general population if his DD time is less than two years and no policy or procedure requiring that he be released to the general population if he is disciplinary free for some period of time. Id. At the time Plaintiff was returned to DD, he had refused directives to uncover his cell window and had threatened to beat up his cellmate. Id. A copy of the incident reports relating to those acts are attached to Mauney's affidavit as Exhibits A and B. Id.

Defendants submitted the affidavit of Dennis Bush (Bush) who attests that he is employed

by the SCDC and was a Major at Perry Correctional Institution in 2012, but is now the Warden at Lee Correctional Institution. (Bush's affidavit, doc. #83-8). On July 30, 2012, Plaintiff was housed in Q2B217. Id. Plaintiff and his cell mate had their window opening covered and were advised by officers to uncover the window. Id. Despite direct orders, Plaintiff and his cell mate failed to uncover the window. As a result, both inmates were placed on 72 hour cell restriction. Id. A copy of an incident report is attached hereto and incorporated herein by reference as Exhibit A. Id. Late on July 30, 2012, Bush was near Plaintiff's cell and heard him threaten to beat his roommate up in the presence of Bush and Sergeant D. Lindsay. Id. As a result, Plaintiff was removed from that cell and escorted to a holding cell. Id. A copy of an incident report is attached to Bush's affidavit as Exhibit B. Id. All inmates going to a holding cell are restrained and that either Bush or another officer were present and the Plaintiff was never in any danger of being attacked by any other inmates. Id. No other inmate attacked, threatened, or harmed the Plaintiff in any way while he was escorted to the holding cell. Id. The Plaintiff was not treated differently than any other inmate who would be escorted from his cell to a holding cell. Plaintiff was placed in lock up under DD time that he had accrued. Id.

Defendants submitted the affidavit of Larry Cartledge (Cartledge), Warden at the Perry Correctional Institution. (Cartledge's affidavit, doc. #83-11). On July 30, 2012, Plaintiff was housed in the general population, but had DD time that he had not served. Id. Plaintiff presently has DD time until February 7, 2015. Id. The decision to transfer an inmate to another institution or place him back in the general population before service of all DD time is within the discretion of the Warden at the institution. Id. Cartledge avers that he has not discriminated against Plaintiff, but determined that Plaintiff should serve DD time. Id. There is no rule that requires the return to a general

population of an inmate who has 2 years or less of DD time. Id. Inmates taken to a holding cell are taken in restraints. Id. There is no requirement that all other inmates be restrained or be absent from the yard when an inmate is being escorted in restraints. Id. Cartledge attests that he is aware of Plaintiff's allegations that he was placed in danger by being escorted in restraints while other inmates were present. Id. The officers followed proper procedure in the case and Plaintiff was not threatened or placed in any danger by any other inmates while being escorted. Id.

The Equal Protection Clause requires the Government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a claim for an equal protection violation in a prison setting, an inmate must demonstrate "that he was treated differently from others similarly situated as a result of intentional or purposeful discrimination . . . . [The inmate] must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not reasonably related to any penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted). Furthermore, in the absence of a fundamental right or a protected class, equal protection only requires that a regulation which results in unequal treatment of an inmate bear some rational relationship to a legitimate penological interest. See McGinnis v.. Royster, 410 U.S. 263 (1973). A "plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently." Newell v. Brown, 981 F.2d 880, 887 (6th Cir. 1992). The plaintiff must show that he/she "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id*. (Internal citations omitted). When the plaintiff has not made such a showing, no cognizable equal protection claim has been stated. *Id.* An equal protection claim which is not supported by factual

allegations should be dismissed as being only conclusory. See Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971). The Plaintiff has offered nothing outside of the conclusory statements that his equal protection rights have been violated. Therefore, Plaintiff fails to show a violation of his equal protection rights, and accordingly, the Defendants should be granted summary judgment on this claim.

Plaintiff also alleges a due process violation in not receiving a new charge for being returned to segregation after being told he was being investigated. The Supreme Court held that inmates are entitled to limited due process rights in prison disciplinary proceedings to the extent that a protected liberty interest is affected. Inmates have a protected liberty interest in the accumulation of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therefore, in prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. Id. These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. Wolff, 418 U.S. at 564-571. There is no due process violation in this case because Plaintiff was serving disciplinary time that had been previously imposed which was within the discretion of the Warden. There was not a new disciplinary violation charged.[2] Plaintiff filed a Step 1 grievance regarding his return to "lockup." The response was that it was the Warden's choice to "reinstate the DD time you had previously earned. You have been convicted of 116 charges during your incarceration and currently have DD time until 04/18/15. At this point you are 13 months

---

[2] No liberty interest is created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976).

disciplinary free however 1 of the disciplinary conviction in [A]pril 2012 was a class 1Narcotics charge and the other a class 2 for Threa[t]ening Staff. Based on this information and your history while incarcerated your grievance denied." (Doc. #105-1, p. 2). Plaintiff filed a Step 2 grievance appealing the decision. (Doc. #105-1, p. 3). The response to the Step 2 grievance was that he was then housed in general population at Lee Correctional Institution but that "[t]he warden has the right to place an inmate back in the Special Management Unit to complete the sanctioned DD time if s/he feels there is a concern for the safety and security of the institution. You were placed in SMU and later you were transferred. Therefore, your grievance is resolved." Id. Plaintiff did not receive a new charge but was returned to SMU to complete the already sanctioned DD time due to his failure to obey orders and threatening his cell mate.

Disciplinary proceedings which implicate a protected liberty interest demand due process. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of life, liberty, or property by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997). When the punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Plaintiff has made no allegations or representations to the court that he lost any good time credits as a result of being returned to DD time but only complains that he lost his visitation rights.[3]  As to any claim Plaintiff is attempting to allege for losing visitation privileges,

---

[3] Plaintiff appears to allege that he was returned to segregation as a form of retaliation for filing grievances against Major Bush. To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally-protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d

the claim fails. There is no protected liberty interest in telephone, canteen, or visitation privileges. See Harris v. Rowe, 2014 WL 3571335 (D.S.C. July 18, 2014) (citing Durdick v. Byars, C/A No. 3:11–2979–CMC–JRM, 2012 WL 5306263, at *5 (D.S.C. Sept. 28, 2012) *adopted at* 2012 WL 5305352 (D.S.C. Oct. 26, 2012). Accordingly, Plaintiff's due process claim fails to state a cognizable claim.[4]

Additionally, Plaintiff has been placed into the general population at Lee Correctional Institution so that any request for injunctive relief to be released to the general population is moot. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

**Qualified Immunity**

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes

---

72, 75 (4th Cir.1994). An inmate must also present more than conclusory accusations of retaliation, id. at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir.1996); Hughes v. Bledsoe, 48 F.3d 1376, 1387 n. 11 (4th Cir.1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. American Civil Liberties Union, Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir.1993)("Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation."). Plaintiff fails to set forth sufficient evidence to establish that Defendants took retaliatory actions against him in response to his grievances against Bush.

[4] Decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed. 813 (1983).

that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does
>  not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

### Pendent Jurisdiction

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### Motion for Default Judgment

Plaintiff filed a motion for default judgment on July 28, 2014, asserting that Defendants had failed to comply with the court's order on July 9, 2013, granting Plaintiff's motion to compel, in part, and ordering Defendants to respond further to certain requests to produce within five days of the date of the order. (Doc. # 107). On July 14, 2014, Defendants filed a motion to enlarge time to respond to the order (doc. #103) requesting four additional days to respond to the Order on the grounds that two of the five days given by the court were on the weekend and the Defendants' attorney was out of the office during a part of the other three days. Additionally, Defendants assert that they served Plaintiff by mail on July 18, 2014, with their response to the court's order.

Defendants' motion for an extension of four days to respond to the court's order was granted

on August 1, 2014. Thus, the responses were due July 18, 2014. Defendants' attorney filed a copy of a letter addressed to Plaintiff dated August 19, 2014. (Doc. #111). In the letter, Defendants' attorney states that he mailed the material pursuant to the court order on July 18, 2014, but "[t]oday I received them back in a damaged condition with a note from the post office that they were inadvertently damaged by the Postal Service. I apologize for the inconvenience and am mailing the materials to you on the same day I received notice that the materials had not been delivered" (Id.). Defendants complied with the court order and the motion for default judgment should be denied.

### III.  CONCLUSION

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants (document #83) for summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

IT IS FURTHER RECOMMENDED that Plaintiff's motion for default judgment (doc. #107) be DENIED and that any outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 22, 2014
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice**.