IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WILLIAM DOUGLAS DAWSON, JR., #248371, | ) ) ) | |
| Plaintiff, | ) ) | No. 4:13-cv-02236-DCN |
| vs. | ) ) ) | **ORDER** |
| ASS. WARDEN DENNIS BUSH; WARDEN LARRY CARTLEDGE; and ASS. WARDEN FLORENCE MAUNEY, | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's Report and Recommendation ("R&R") that this court grant the motion for summary judgment filed by defendants Associate Warden Dennis Bush ("Bush"), Warden Larry Cartledge ("Cartledge"), and Associate Warden Florence Mauney ("Mauney") (hereafter "defendants") and deny plaintiff William Douglas Dawson's ("Dawson") motion for default judgment. For the reasons set forth below, the court adopts the R&R in full and grants summary judgment as to all defendants.

## I. BACKGROUND

Dawson is an inmate currently housed at the Lee Correctional Institution ("LCI") within the South Carolina Department of Corrections ("SCDC"). Prior to his transfer to LCI and at all times relevant to Dawson's allegations, he was housed at the Perry Correctional Institution ("PCI"). Dawson alleges that on July 30, 2012, Bush, then a major, "placed [his] life and safety in mortal danger" when he restrained Dawson in handcuffs before escorting him out of the wing after a large fight occurred in the wing.

1

2d. Am. Compl. 3. Dawson alleges that Bush should have either escorted him off the wing before placing him in handcuffs or put the wing on lock down. Id. at 4. Dawson alleges that Bush "was purposefully trying to have [him] assaulted or even killed." Id. Dawson then claims that he tried to address the issue with Cartledge and Mauney but that both defendants ignored him. Id. at 5. Dawson alleges that he was placed in lock-up to serve disciplinary detention ("DD time") that evening where he remained without cause. Id.

Dawson filed the present action on August 19, 2013 pursuant to 42 U.S.C. § 1983 alleging that Bush, Cartledge, and Mauney violated his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments. Id. at 6. Specifically, Dawson alleges that Bush put his life in serious danger and that Cartledge denied him the freedom of association. Id. Dawson further alleges that Cartledge and Mauney discriminated against him and violated his substantive and procedural due process rights by placing him in disciplinary detention for no reason and refusing to return him to general population while releasing other inmates. Id. Dawson seeks injunctive relief as well as money damages.

Defendants filed a motion for summary judgment on May 23, 2014. Dawson responded on July 9, 2014. On July 28, 2014, Dawson filed a motion for default judgment against defendants for failure to comply with United States Magistrate Judge Bristow Marchant's ruling on Dawson's motion to compel. The magistrate judge issued the R&R on defendants' motion for summary judgment and Dawson's motion for default judgment on August 22, 2014, recommending that the court grant defendants' motion for summary judgment and deny Dawson's motion for default judgment. Dawson filed

objections to the R&R on September 10, 2014. This matter is now ripe for the court's review.

## II.   STANDARD

### A.  Objections to Report and Recommendation

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

### B.  Pro Se Plaintiff

Dawson appears pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Haines v. Kerner, 404 U.S. 519, 521 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a cognizable claim, nor does it mean the court can assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### C.  Summary Judgment

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor.  Id. at 255.

### III.  DISCUSSION

Dawson objects to the R&R on twelve grounds.  Because Dawson's objections are repetitive and overlapping, the court condenses Dawson's list into six broad objections but will address each specific objection within the relevant section below. Dawson asserts that the magistrate judge erred in:  (1) finding that there was no violation of his Eighth Amendment rights; (2) finding that the PLRA requirements apply to the SCDC's grievance procedure and that he failed to meet the exhaustion requirements; (3) finding that Dawson never filed a grievance regarding his equal protection rights; (4) finding that Dawson was not held illegally without cause; (5) finding that defendants were not in default because the court granted an extension; and (6) finding that there was no violation of his Fourteenth Amendment rights.  The court will address each objection in turn.

**A. Eighth Amendment Violations**

Dawson first objects to the magistrate judge's finding that he has failed to state an Eighth Amendment violation.  Pl.'s Objections 1.[1]  The Eighth Amendment "protects

---

[1] Dawson specifically objected to the magistrate judge's finding on page 4, line 11.  Pl.'s Objections 1. However, page 4, line 11 of the R&R does not reflect the magistrate judge's findings but rather is an

4

inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The guarantees of the Eighth Amendment extend to protect inmates "from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm." Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)). The same standard that courts apply to denial of medical care claims, deliberate indifference, is applied to failure to protect claims. Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (stating that a failure to protect claim "is no different in any meaningful respect from the indifferent-to-medical-needs claim and is governed by the same standard of deliberate indifference"). The Supreme Court has stated:

> [W]e see no significant distinction between claims alleging inadequate medical care and those alleging inadequate "conditions of confinement." Indeed, the medical care a prisoner receives is just as much a "condition" of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates. There is no indication that, as a general matter, the actions of prison officials with respect to these nonmedical conditions are taken under materially different constraints than their actions with respect to medical conditions.

Wilson v. Seiter, 501 U.S. 294, 303 (1991).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 319 (1986) (holding that deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety"). Under the deliberate indifference standard, a plaintiff must satisfy both a subjective and an objective

---

outline of the defendants' argument. Therefore, the court will address the objection more generally as it applies to the magistrate judge's actual findings.

component to show the violation of a constitutional right.  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).  The objective component requires a prisoner to "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions."  De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).  "The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials."  Id. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition."  Id.

  The magistrate judge found that Dawson failed to exhaust his administrative remedies regarding his Eighth Amendment claims.  The magistrate judge further found that, even if Dawson had exhausted his administrative remedies regarding his Eighth Amendment violations, his claim fails because Dawson "has failed to produce any evidence sufficient to satisfy either the objective or subjective prongs of the Eighth Amendment analysis."  R&R 7.  Dawson alleges that Bush intentionally subjected him to a serious risk that he would be killed when he handcuffed him in his cell prior to escorting him out of the wing while other inmates were not on lock-down.  Dawson has failed to allege sufficient facts to satisfy either subjective or objective component of deliberate indifference.  Although Dawson claims that he could have been killed by other inmates, Dawson does not allege that he actually suffered any injury at all.  Further, there is no indication that Dawson was actually under an objective risk of harm.  According to Dawson's complaint, Bush handcuffed him while he was in his cell and told other prisoners in the yard to step back while he escorted him out of the wing.  Therefore, the

court adopts the magistrate judge's finding that Dawson has failed to establish an Eighth Amendment violation.

### B. Prison Litigation Reform Act

Dawson next objects to the magistrate judge's findings that the PLRA applies to the grievance procedure and that he did not exhaust his administrative remedies regarding his Eighth Amendment claims. Pl.'s Objections 1–2. Under § 1997e(a) of the Prison Litigation Reform Act ("PLRA") "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Fourth Circuit has held that an administrative remedy is not considered "available" if a prisoner was prevented from availing himself of it through no fault of his own and that a "a prisoner has exhausted his available remedies, even if prison employees do not respond." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[T]o exhaust administrative remedies, the PLRA requires only '[c]ompliance with prison grievance procedures.'" Id. at 726 (quoting Jones v. Bock, 549 U.S. 199, 217 (2007)). South Carolina courts hold that exhaustion requires completion of Step 2 of the SCDC grievance procedure; however, prisoners are not <u>required</u> to appeal the decision of the prison's internal grievance board to the Administrative Law Court. See, e.g., Ayre v. Currie, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007) ("The fact that the South Carolina Legislature made a court available . . . does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial

forums."); Charles v. Ozmint, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). It is clear that the PLRA applies to Dawson's grievances.

Dawson next objects to the magistrate judge's findings that he failed to exhaust his administrative remedies regarding his Eighth Amendment claims. Pl.'s Objections 1–2.[2] In Dawson's Step 1 grievance, received on August 1, 2012, he stated that on July 30, 2012, Bush put his health and life in danger by placing him in handcuffs while he was in his cell before escorting him off the wing. Defs.' Mot. Ex. 3. Cartledge responded to the first grievance on June 27, 2013, stating that based on the information Dawson provided, the grievance was without merit. Id. Dawson submitted a Step 2 grievance on July 1, 2013, stating that Bush was "trying to get one of these inmates to kill me while I was in restraints." Id. It is unclear whether prison staff actually responded to Dawson's Step 2 grievance; however, as stated above, "a prisoner has exhausted his available remedies, even if prison employees do not respond." Moore, 517 F.3d at 725. Therefore, Dawson exhausted his remedies regarding his Eighth Amendment claims as required under the PLRA.

Although the magistrate judge incorrectly found that Dawson failed to exhaust his administrative remedies regarding his Eighth Amendment claims, as discussed above, the magistrate judge also addressed the merits of his Eighth Amendment claims. Because the court adopted the magistrate judge's findings regarding Dawson's Eighth Amendment claims and held that Dawson failed to allege sufficient facts to satisfy the subjective or

---

[2] Although Dawson does not specifically object to the magistrate judge's exhaustion findings as they relate to his Eighth Amendment claims, he does object to the magistrate judge's conclusions regarding exhaustion generally. See Pl.'s Obj. 1–2. Because the magistrate judge found that Dawson met the PLRA's exhaustion requirements regarding all claims except his Eighth Amendment allegations, the court will only address exhaustion as it applies to Dawson's Eighth Amendment claims.

8

objective components of the deliberate indifference test, it is irrelevant whether Dawson met the exhaustion requirements under the PLRA.[3]

### C. Due Process

Dawson objects to numerous findings in the R&R regarding his confinement in lock-up for DD time. Dawson specifically objects to the magistrate judges findings that (1) Dawson is currently housed at LCI despite the fact that he has unserved DD time; (2) he covered the window in his cell, arguing that it was his cell mate who covered the window; (3) there is no rule that requires prison staff to return inmates to general population if they have two years or less of DD time; (4) his confinement did not violate his due process rights, nor was he discriminated against in violation of his equal protection rights for his confinement; (5) Cartledge's decision to keep him in lock-up was within his discretion; and (6) Dawson's liberty was not taken without cause.

Prisoners are entitled to constitutional protections; however, those rights are limited in comparison to the rights of defendants in criminal proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). Minimum procedural protections are required when a prisoner may be deprived of a liberty interest under the Due Process Clause. Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012). The required minimum protections are: (1) advance written

---

[3] Dawson next objects to what he believes is the magistrate judge's finding that Dawson failed to file a grievance regarding equal protection. Pl.'s Obj. 2 (referencing page 6 line 25 of the R&R). However, Dawson points to the defendants' argument recognized in the R&R and not the magistrate judge's own findings. In fact, the magistrate judge found that "it appears Plaintiff has exhausted his administrative remedies with regard to the allegations associated with DD which also raised allegations of discrimination/equal protection violation." R&R 8. The magistrate judge found that although Dawson failed to exhaust his administrative remedies for his Eighth Amendment claims, Dawson did properly exhaust his administrative remedies regarding his discrimination and due process claims. The magistrate judge then addressed the merits of Dawson's equal protection and due process claims. See R&R 8–14. Therefore, Dawson's objection fails.

notice of the disciplinary hearing; (2) an opportunity to present evidence and call witnesses on his behalf, unless doing so would be hazardous to institutional safety and correctional goals; and (3) receipt of a written statement of the factfinder as to the evidence used in their determination and the reason for the disciplinary action.  Brown v. Braxton, 373 F.3d 501, 504–05 (4th Cir. 2004).  In the prison context, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

Dawson's first two objections regarding his DD time are to page 9 lines 6, 7, and 9 of the R&R.  Pl.'s Objections 3.  However, his objection actually relates to the defendants' argument and not the magistrate judges findings.  R&R 9.  Dawson next objects to the magistrate judge's finding that there is no prison policy requiring prison officials to return inmates to general population once they have less than two years DD time remaining.  Pl.'s Objections 3.  Although Dawson alleges that he was told numerous times that he had to have less than two years DD time to be released from lock-up, he provides no evidence of a prison policy to that effect.  Rather, the evidence shows that it is within the discretion of the warden whether to return the inmate to general population when they have unserved DD time.  See Mauney Aff. ¶ 3; Cartledge Aff. ¶ 3.

Dawson next objects to the magistrate judge's finding that Cartledge and Mauney did not violate his due process rights.  Dawson alleges that Mauney and Cartledge violated his substantive and procedural due process rights by refusing to return him to general population without providing him a hearing or notice of why he was being kept in lock-up.  Pl.'s Objections 4.  The evidence shows that prison officials told Dawson on numerous occasions why he was being kept in lock-up, each time referencing Dawson's

continuous disciplinary issues.  See Pl.'s Resp. Ex. 1.  Prison officials responded to each grievance and staff request Dawson filed relating to his time in lock-up.  See id.  In response to his Step 1 grievance, Cartledge stated:

> It is true that you did not receive a charge when the investigation was complete however it was my choice to re-instate the DD time you have previously earned.  You have been convicted of 116 charges during your incarceration and currently have DD time until 04-18-15.  At this point you are 13 months disciplinary free however 1 of the disciplinary convictions in april [sic] 2012 was a class 1 Narcotics charge and the other a class 2 for Threaening [sic] Staff.  Based on this information and your history while incarcerated your grievance denied [sic].

Defs.' Reply Ex. 1.  Dawson continued to file grievances relating to the same issue.  See Pl.'s Resp. Ex. 1.  The evidence shows that Dawson was returned to lock-up to serve DD time he previously accrued after he threatened his cell mate and refused to uncover his cell window.  Cartledge's decision to keep Dawson in lock-up in light of his disciplinary record was a legitimate exercise of his discretion as warden.  Therefore, Dawson failed to establish a due process violation.

### D. Equal Protection

Dawson next objects to the magistrate judge's finding that he failed to establish an equal protection violation.  Pl.'s Objections 3–4.  "[W]hile a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause . . . must still be analyzed in light of the special security and management concerns in the prison system."  Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001).  "To succeed on an equal protection claim, a prisoner must first show that he was treated differently from others who were similarly situated and that the unequal treatment resulted from intentional or purposeful discrimination."  Daye v. Rubenstein, 417 F. App'x 317, 318 (4th Cir. 2011).

After the prisoner makes such a showing, the prisoner "must allege facts that, if 'true, would demonstrate that disparate treatment lacks justification under the requisite level of scrutiny.'" Id. at 318–19 (quoting Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002)). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Courts apply a four-part test to determine whether a prison policy is constitutional:

> (1) whether there is a valid, rational connection between the policy and the penological interest; (2) whether an alternative means of exercising the right remains open to prison inmates; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

Morrison, 239 F.3d at 655.

Dawson alleges that defendants Cartledge and Mauney violated his equal protection rights by refusing to release him back into general population for no reason, while allowing other inmates with less than 2 years DD time remaining to leave lock-up. The magistrate judge found that Dawson "has offered nothing outside of the conclusory statements that his equal protection rights have been violated . . . and fails to show a violation of his equal protection rights." R&R 12. Although Dawson alleges that Cartledge told him that he would be released once he had less than two years DD time, there is no evidence of a prison policy that requires inmates to be returned to general population at that time. Mauney Aff. ¶ 3; Cartledge Aff. ¶ 3. Rather, it is within Cartledge's discretion whether to keep an inmate serving DD time for prison infractions in lock-up. Cartledge Aff. ¶ 2. Dawson has DD time until February 7, 2015 for various

prison infractions. Mauney Aff. ¶ 3; Cartledge Aff. ¶ 2. Specifically, prison officials returned Dawson to DD time after an incident during which Dawson's cell window was covered and neither Dawson nor his cellmate complied with orders to uncover the window. Defs.' Mot. Ex. 6. Further, Dawson threatened to beat up his cellmate. Defs.' Mot. Ex. 7. Both events are outlined in incident reports. Defs.' Mot Ex. 6, Ex. 7.

Dawson filed numerous grievances relating to his time in lock-up. See Pl.'s Resp. Ex. 1. On September 25, 2012, Mauney told Dawson that "[y]ou have disciplinary detention until 02/24/21 unless you get additional charges and acquire more" and that Mauney "will release people to the yard starting with those who have the least amount of time unless there are other reasons to hold them in lock-up . . . but right now beds on the yard are very few and there are many ahead of you." Id. at 3. Dawson continued to file essentially the same grievance and was told that he continued to have disciplinary issues that were not helping his efforts to be returned to the general population, referencing his last disciplinary issue on April 12, 2012 for use and possession of narcotics. See id. at 4-8. On October 22, 2012, Robert Ward, Deputy Director of Operations at PCI, sent Dawson a letter in response to a staff request concerning Dawson's time in lock-up. Id. at 9. Ward stated that:

> Your records indicate that you were previously afforded the opportunity to be released back into general population as long as you maintained behavior consistent with inmates housed in general population and didn't get into further trouble. Then you were placed under "investigation," and even though no new charges were brought against you, your behavior clearly indicated that general population is not the place for you at this time.

Id. Dawson continued to file grievances concerning his time in lock-up, but the grievances were returned as duplicates because the grievance policy allows inmates to submit only one grievance per circumstance. Id. at 12.

Dawson has failed to show that he was treated differently than similarly situated inmates and that his unequal treatment resulted from intentional discrimination as required to establish an equal protection violation. Although Dawson claims that other inmates with less than two years DD time were released into the general population, Mauney explained to Dawson that the first inmates released are those with the least amount of time and that space in general population was limited. See Pl.'s Resp. Ex. 1 at 3. Further, the incident reports provide evidence of Dawson's disciplinary issues and support Cartledge and Mauney's decision that he remain in lock-up. Therefore, even if Dawson establishes an equal protection violation, Mauney and Cartledge satisfy the rational basis level of scrutiny.

### E. Default Judgment

Dawson objects to the magistrate judge's finding that Dawson's motion for default judgment should be denied because defendants complied with the court's order after an extension was granted. Pl.'s Obj. 5-6. Rule 55 of the Federal Rules of Civil Procedure allows the court clerk to enter default against a defendant who fails to plead or otherwise defend. The law disfavors default judgments and favors resolution of claims on their merits. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2681 (3d ed. 1998). Nevertheless, "[i]t is well established that the district court has the authority to dismiss or to enter default judgment, depending on which party is at fault, for failure to prosecute with reasonable diligence or to comply with its orders

or rules of procedure." Flaksa v. Little River Marine Constr. Co., 389 F.2d 885, 887 (5th Cir. 1968). This power "is one inherent in the courts in the interest of the orderly administration of justice [and] may be exercised sua sponte under proper circumstances." Id. (internal quotations omitted); Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 614 (2d Cir. 1964); Singapore Tong Teik PTE Ltd v. Coppola, No. 04-cv-3440, 2007 WL 2375796, at *4 (E.D.N.Y. Aug. 17, 2007); Guardian Life Ins. Co. of Am. v. Spencer, No. 10-cv-0004, 2011 WL 39089, at *1 (W.D. Va. Jan. 5. 2001).

On July 28, 2014, Dawson filed a motion for default judgment against defendants. Dawson claims that the defendants failed to comply with Judge Rogers' order granting Dawson's motion to compel. Dawson alleges that defendants were required to produce certain documents within five days of the order, but failed to do so. On July 9, 2014, Judge Rogers did order defendants to produce certain documents responsive to Dawson's production requests within 5 days. However, defendants filed a motion for extension of time on July 14, 2014, requesting 4 additional days to produce the documents. The magistrate judge granted defendants' motion on August 1, 2014, giving defendants until July 18, 2014 to produce the documents.

Defendants provided a letter from their attorney addressed to Dawson dated August 19, 2014. The letter stated that the materials were sent to Dawson on July 18 in compliance with the court order. However, the lawyer notified Dawson that "[t]oday I received them back in a damaged condition with a note from the post office that they were inadvertently damaged by the Postal Service. I apologize for the inconvenience and am mailing the materials to you on the same day I received notice that the materials had not been delivered." Defs.' Reply to Mot. to Compel. Thus, the magistrate judge

recommended the court deny Dawson's motion for default judgment, finding that defendants did comply with his order.

The evidence shows that defendants did comply with the order on the motion to compel and served Dawson by mail on July 18, 2014, the fourth day provided in the court's four-day extension. Dawson did not receive the documents because the Postal Service returned them to defendants. However, defendants re-sent the documents on the same day explaining the problem. Thus, the court adopts the magistrate judge's recommendation that Dawson's motion for default judgment be denied because the evidence shows that defendants complied with the order.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R in full, and **GRANTS** the defendants' motion for summary judgment and **DENIES** plaintiff's motion for default judgment. All remaining pending motions are **MOOT**.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 19, 2015**
**Charleston, South Carolina**